UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                         :

MONEYGRAM PAYMENT SYSTEMS, INC.   :

                        Plaintiffs,   :
                                   :    06 Civ. 1633 (GEL)

      -against-   :
                                   :    **OPINION AND ORDER**

PRIMA CHECK CASHING, INC. et al.,   :

                        Defendants.   :
-----------------------------------------------------------------x

Jonathan Matthew Borg, Pitney Hardin LLP, New York, NY, for plaintiff.

M. Stuart Goldberg, White Plains, NY, for defendants Prima Check Cashing, Inc., Armored Car, Ltd., and American Compaction Systems, Inc.

Richard Weiss, New Rochelle, NY, for defendants Michael Colasuonno, Dorothy Colasuonno, Philip Colasuonno, Maria Colasuonno, Dominick Colasuonno, and Renee Colasuonno.

GERARD E. LYNCH, District Judge:

      Plaintiff Moneygram Payment Systems, Inc. filed this contract action to recover funds allegedly owed to it by Prima Check Cashing, Inc., an authorized seller of MoneyGram products, under a Trust Agreement that governed the entities' relationship. In addition to Prima, the defendants are Prima's owners, Phillip, Dominic, and Michael Colasuonno, and their wives (collectively, "the Colasuonnos"), all of whom guaranteed Prima's obligations to MoneyGram under the Trust Agreement; and American Armored Car, Ltd. and American Compaction Systems, Inc., two other companies owned by the Colasuonnos, which allegedly received

fraudulent transfers of the funds owing to MoneyGram. (MoneyGram Mem. 3-4.)

The Colasuonnos and corporate defendants filed separate answers to the complaint. The corporate defendants' answer includes six counterclaims seeking compensatory and punitive damages totaling over $90 million. The gravamen of these counterclaims is that MoneyGram, which terminated the Trust Agreement prior to commencing this action, did so unlawfully and maliciously. The Colasuonnos' answer asserts similar counterclaims. (Corp. Ans. ¶¶ 50-74; Colas. Ans. ¶¶ 84-107.) MoneyGram now moves to dismiss under Fed. R. Civ. P. 12(b)(6), or in the alternative to strike under Rule 12(f), the majority of these counterclaims. For the following reason, the motion will be granted in part and denied in part.

## DISCUSSION

Under Rule 12(b)(6), the question is whether defendants' counterclaims are legally insufficient, and under Rule 12(f), whether they are redundant or contain any impertinent matter. Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985); Avnet, Inc. v. Am. Motorists Ins. Co., 115 F.R.D. 588, 592 (S.D.N.Y. 1987).

I. Tort Liability and Punitive Damages

MoneyGram first seeks dismissal of the fifth and sixth counterclaims in the corporate defendants' answer. These counterclaims, under which defendants seek punitive damages, allege that MoneyGram's termination of the Trust Agreement was "willful and malicious" and caused the defendants "significant and unwarranted damage." (Corp. Ans. ¶¶ 69-74.) Defendants note that the termination occurred during the height of the check cashing "season," (id. ¶ 62) and was "a component of a systematic attempt to financially cripple" them (id. ¶¶ 64, 67). MoneyGram argues that these claims sound in contract, and that punitive damages are unavailable on a

contract claim, and may only be sought where a breach of contract constitutes, or is accompanied by, a tort that independently warrants such damages. Hern v. Bankers Life Cas. Co., 133 F.Supp.2d 1130, 1138 (D. Minn. 2001) (citing Minnesota cases). (MoneyGram Mem. 10-11, 13-14.)[1] The corporate defendants agree with MoneyGram's legal analysis, but respond that its "exceptional," "willful," and "malicious" termination of the agreement was indeed tortious in nature. (Corp. Mem. 13-14; Corp. Ans. ¶ 73.)

A willful, bad-faith, or malicious breach of contract, which is all that defendants allege, does not by itself suffice to convert a contract claim into a tort claim. See, e.g., Moore v. John E. Blomquist, Inc., 256 N.W.2d 518, 518 (Minn. 1977); Cauff Lipman & Co. v. Apogee Fin. Group, Inc., No. 90 Civ. 5970, 1991 WL 64197, at *1 (S.D.N.Y. Apr. 13, 1991) (interpreting New York law). Nevertheless, under exceptional circumstances, a breach of contract can give rise to a tort claim, for example where the law imposes on a contracting party an independent duty of care as an incident of his relationship with the other party, see, e.g., Wild v. Rarig, 302 Minn. 419, 440-41 (1975) (common carrier's duty to passengers); Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 552-53 (1992) (fire alarm company's duty to building owner), or where the breach results in physical damage to person or property, or in an "abrupt, cataclysmic

---

[1] It is clear that Minnesota law governs any contract claims between the parties, all of which arise out of the Trust Agreement. (Borg Aff., Ex. A., Trust Agreement ¶ 28.) However, it is unclear that it also necessarily governs related tort claims, as the parties appear to assume. See, e.g., Williams v. Deutsche Bank Secs., Inc., No. 04 Civ. 7588, 2005 WL 1444435, at *3-*6 (S.D.N.Y. June 13, 2005) (holding law governing contract claims, pursuant to choice-of-law provision in contract, did not govern related tort claims). As the parties do not address the choice of law issue, or avert to any relevant difference between the law of Minnesota and that of another jurisdiction whose law may potentially be applicable, the Court analyzes the parties' claims under Minnesota law, and reserves the choice of law issue, if any party chooses to raise it, to a later stage.

occurrence," id. at 552.  See generally W. Page Keeton et al., Prosser and Keeton on Torts, § 92, at 655-66 (5th ed. 1984) (providing guideposts for distinguishing tort and contract liability). While this case seems far-removed from those in which a tort claim has been held to exist, the distinction between tort and contract "has become an increasingly difficult distinction to make," id. § 92, at 655, and invariably turns on a review of the particular circumstances of the case at hand.  It is thus ill-suited for resolution at the pleadings stage.  Accordingly, the Court declines to dismiss defendants' fifth and sixth counterclaims.

However, the third, fourth, fifth, and sixth counterclaims in the corporate defendants' answer are redundant, in that they each allege as a tort MoneyGram's termination of the Trust Agreement, but differ only in the type of damages sought.  For the sake of clarity, these claims should be consolidated.[2]  See Avnet, 115 F.R.D. at 592 (striking "redundant" claim, holding all legal theories for particular brand of liability "should, for the sake of clarity, be included in a single claim for relief").  Accordingly, the third, fourth, fifth, and sixth counterclaims in the corporate defendants' answer are stricken under Rule 12(f) with leave to replead under Rule 15(a).

II. Armored Car's and American Compaction's Claims

MoneyGram next seeks dismissal of the counterclaims advanced on behalf of Armored Car and American Compaction, noting that these entities are not parties to the Trust Agreement.

---

[2] The third and fifth counterclaims are advanced on behalf of Prima, while the fourth and sixth counterclaims are advanced on behalf of Armored Car and American Compaction.  Thus, the third and fifth counterclaims should be consolidated into one claim, as should the fourth and sixth.

4

(MoneyGram Mem. 11-13.)[3] The corporate defendants respond that under the Trust Agreement, the term "Trustee" is defined to include not only Prima, but also Prima's "affiliates." (Trust Agreement ¶ 1.) The term "affiliates," in turn, is defined to include "any business controlling, controlled by or under common control" as Prima. (Id.)[4] Defendants reason that because the Colasuonnos are "officers and/or owners" of all three corporations, the three companies are "under common control" and collectively constitute the "Trustee" referred to by the agreement. (Corp. Mem. 15-16.) MoneyGram generally denies that Armored Car and American Compaction are Prima affiliates, and in its reply brief, notes that neither company signed the Trust Agreement, which it deems fatal to any claim that these entities are parties to that agreement. (Reply 6-7.)

Whether there is sufficient evidence of common control between Prima, Armored Car, and American Compaction, such that they are "affiliates" under the Trust Agreement, and whether their lack of signature is in any event fatal to their claim to party status, cf. Thompson-CSF, S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995) (noting, in arbitration context, that nonsignatory may be bound to agreement under "ordinary principles of contract and agency," such as corporate-veil piercing/alter-ego analyses), are factual questions that cannot be resolved at this stage of the proceedings. The Court will thus permit these counterclaims to

---

[3] Defendants appear to assume that if Armored Car and American Compaction are not parties to the Trust Agreement, they may not assert any claim against MoneyGram, whether sounding in contract or in tort. (Corp. Mem. 15-16.) The Court need not determine whether this is actually the case, because these entities' claim to party status cannot be rejected at this stage of the proceedings.

[4] The Court may consider the terms of the Trust Agreement in ruling on MoneyGram's motion, because it is incorporated by reference in defendants' answers. (Colas. Ans. ¶¶ 10-11; Corp. Ans. ¶ 6.) See Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995).

5

proceed. Nevertheless, the Court observes that defendants may elect to remove them on their own. MoneyGram points out that defendants' argument is a double-edged sword: if Armored Car and American Compaction, along with Prima, constitute the "Trustee" referred to in the Agreement, then MoneyGram can directly sue Armored Car and American Compaction for breach of the Trustee's obligations, just as it has sued Prima, and seek recovery from them of the alleged $7 million in unpaid debt under the agreement, and any other appropriate relief (currently, MoneyGram seeks from these defendants only funds that it claims were allegedly fraudulently transferred by Prima). In fact, MoneyGram indicates that it will amend its complaint to do just this if defendants continue to advance these counterclaims. (Reply 7 n.5.)

III. The Colasuonnos' Counterclaims

Finally, MoneyGram argues that the four counterclaims asserted by the Colasuonnos, which it alleges sound in contract, and which are again premised on MoneyGram's termination of the Trust Agreement, are at most affirmative defenses, and should be repled as such. MoneyGram argues that the Trust Agreement is a contract solely between MoneyGram and Prima (and, perhaps, Armored Car and American Compaction), and that the Colasuonnos did not become parties to that agreement just because they guaranteed Prima's obligations. See Schmidt v. McKenzie, 215 Minn. 1, 6 (1943) (reciting rule that "[t]he debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation" (quotation omitted)); accord In re Harstad, 136 B.R. 806, 809-810 (Bankr. D. Minn. 1992) (citing Minnesota cases, including Schmidt).[5] That being the case, the Colasuonnos cannot assert any contract claim

---

[5] Minnesota law governs the Colasuonnos' rights as guarantors. See Days Inn of Am., Inc. v. L.A., Inc., No. 97 Civ. 5476, 1998 WL 765182, at *3-*4 (S.D.N.Y. Nov. 3, 1998) (holding where agreement and guaranty "part of the same transaction," forum selection clause in

6

against MoneyGram, although they are free to assert MoneyGram's conduct as a defense to MoneyGram's "breach of guaranty" claim (Compl. ¶¶ 26-33), in order to reduce or eliminate their guarantor liability. (MoneyGram Mem. 15-17.)

The Colasuonnos take no issue with MoneyGram's analysis, or with its characterization of the counterclaims in their answer, but instead posit a claim not advanced in their answer, that the Colasuonnos were fraudulently induced into the signing of the guaranty contract. (Colas. Mem. 7.)[6] While such a claim, if it could be pled in good faith, and is supported by the evidence, may have merit, cf. GM Acceptance Corp. v. Kalkstein, 474 N.Y.S.2d 493, 495-96 (1st Dep't 1984), that is not what is presently advanced in the answer. For that reason, the counterclaims in the Colasuonnos' answer are dismissed.

## CONCLUSION

For the foregoing reasons, MoneyGram's motion to dismiss, or in the alternative to strike, defendants' counterclaims is denied in part and granted in part.

SO ORDERED.

Dated: New York, New York
      June 9, 2006

                                                                       GERARD E. LYNCH
                                                            United States District Judge

---

agreement applied to guaranty)

    [6] The fraud theory is the only theory of tort liability advanced in the Colasuonnos' opposition memorandum, and it is thus the only one addressed by the Court.

against MoneyGram, although they are free to assert MoneyGram's conduct as a defense to MoneyGram's "breach of guaranty" claim (Compl. ¶¶ 26-33), in order to reduce or eliminate their guarantor liability. (MoneyGram Mem. 15-17.)

The Colasuonnos take no issue with MoneyGram's analysis, or with its characterization of the counterclaims in their answer, but instead posit a claim not advanced in their answer, that the Colasuonnos were fraudulently induced into the signing of the guaranty contract. (Colas. Mem. 7.)[6] While such a claim, if it could be pled in good faith, and is supported by the evidence, may have merit, cf. GM Acceptance Corp. v. Kalkstein, 474 N.Y.S.2d 493, 495-96 (1st Dep't 1984), that is not what is presently advanced in the answer. For that reason, the counterclaims in the Colasuonnos' answer are dismissed.

## CONCLUSION

For the foregoing reasons, MoneyGram's motion to dismiss, or in the alternative to strike, defendants' counterclaims is denied in part and granted in part.

SO ORDERED.

Dated: New York, New York
June 9, 2006

_____
GERARD E. LYNCH
United States District Judge

---

agreement applied to guaranty)

[6] The fraud theory is the only theory of tort liability advanced in the Colasuonnos' opposition memorandum, and it is thus the only one addressed by the Court.

7